My name is Viswanathan Rudrakumaran. I represent the petitioner in this case. First of all, I would like to address the mootness argument by the government with respect to the petitioners withholding of renewal to Sri Lanka under the INA and under the CAT. And I must also first of all apologise to the court for not raising this issue in my letter brief. But my client has gone to Canada, Your Honour. The entry and removal between US and Canada is different from US and any other country. The entry and removal between US and Canada is governed by the same third country agreement between Canada and US. So suppose if a person is going to Canada and he makes a claim for refugee status in Canada and his claim is denied, he will be sent back to US. By operation of law, he will be sent back to US. So he will be here. Then there is another question whether he will come as an arriving alien or whether he will come as a person who was in an earlier status is a different matter. But he will definitely be back in the US, Your Honour. So therefore, the claim, the withholding of removal claim is not moot. It still has collateral consequences, Your Honour. Having said that, then I will go to the, first I would like to address the torture convention claim, Your Honour. The torture convention claim, from our point of view, the DIA made two errors. One is the legal error as well as the factual error. We argue that his case is governed by matter of GA, whereas the DIA says, no, his case is governed by matter of JFF. And it cites, because in matter of JFF, the attorney general said that you cannot produce a claim based on supposition. But that's not the case here. Here is a fact test. The combination of factors, the petitioner is a young criminal who is normally perceived as an LGT member is a fact. It is not a supposition. He was subjected to past accusation as an LGT member is a fact. It's not a supposition. He was perceived as an LGT supporter is a fact. He was detained, he was beaten severely is a fact. When he is returned, he will come to the notice of the authority is a fact because he will go not on a regular passport but on an emergency passport. So our question, Your Honour, under matter of GA, the combination of all these factors, the cumulative effect of all these factors, clearly has to compress a conclusion that it is more likely than not that my client will be tortured if he is returned to Sri Lanka. But the BIA missed the silent feature of matter of GA and simply said matter of GA stands for a proposition when there is a pervasive torture in Sri Lanka. But even on that factor, Your Honour, this court has held in Kamala Das v. INS that there is a widespread use of torture in Sri Lanka. Even after the end of war, the State Department reports still talk about torture in Sri Lanka. The BIA argues that the war has ended, therefore the likelihood of torture is ended. But that's not the case, Your Honour. War is different from persecution. All these years, there was a persecution in the context of war but what's now happening according to the State Department report itself, the persecution continues in the absence of war. Therefore the fact that the war is over has no relevance, even based on the record that my client will be subject to torture. And whether what happened to him constitutes past torture? According to the State Department report, the methods of torture they characterize, you beat with a horse filled with sand is a method of torture. That's what according to the US State Department. And my client was severely beaten with a horse, Your Honour. So, by the contention, first of all, that he was subjected to past torture. Then a second important point, like the Haile case, he feared that one of the minister, one of the prosecutor is holding a high position in government and therefore if he goes back he will be subjected to torture. That person is still holding the position even now. There is no change. So, however, the BIA did not take that into account. The BIA simply said, Your Honour, another point, Your Honour, the BIA said that there is a changed country condition. But the BIA should have engaged in a detailed analysis because according to the case law, there should be a permanent, durable peace, then only there is a changed country condition. But BIA did not engage in that analysis. But the State Department report itself says that not only LTTP members but LTT sympathizes. And I have highlighted those portions in my brief as well as in my reply brief, Your Honour. And next I would like to address the de minimis argument, Your Honour. First of all, I must say in Haile versus Holder, that was not a dispositive issue. That issue was not decided by the court as a precedential value. In fact, the court itself said that issue is not dispositive whether she engages in terrorist activities or not. So the de minimis argument has not been fully addressed by this court in Haile versus Holder. The Haile versus Holder simply observed one of the observations made by the BIA in matter of escape. In matter of escape, the BIA said, Your Honour, that according to the DHS, the DHS argues that it has expanded reach and then it also said Congress has not expressly indicated its intent to provide an exception for contribution which are de minimis. Having said that, the BIA itself said, on the other hand, the respondents' contrary argument that material should be given independent content is by no means frivolous. Having said both, then the BIA engaged in an analysis. They engaged in an analysis to see whether this $110, whether that constitutes a quote-unquote material under the law. So the BIA itself engaged in that analysis. Now this was very well addressed by the dissent in Sinclair versus Ashcroft in the Third Circuit. First of all, the dissent clearly states it's a very detailed opinion on this issue. The dissent said the Chevron difference is not applicable in this case because the language is plain and simple. So the court engaged in a de novo review in that case. Sorry, the dissent engaged in a de novo review. And the court said otherwise the material should be given two meanings. One is relevance, one is importance. If the word material does not have any meaning whatsoever at all, then there is no purpose of Congress to put that one. It will be just surplus, and every word in the statutory construction should be given a meaning. So therefore the court did not give the Chevron difference to that statutory interpretation. And the court argued, the dissent said, the dissent argued that the word material should be given relevance as well as importance. And it also, the dissent said that based on the commission of terrorist activity to any individual who is engaged in terrorist activity to any organization, it all tied up to a terrorist activity. If not, then nothing. But most importantly, the court also said there should be magnitude. The quality, the substance should be material. Otherwise there is no meaning for the word material. So based on that one, our contention is that my client, he repaired the computers, installed some software, and there is a dispute whether it is worth of $5 or $65. Arguing though, arguing though it is worth of $65, given the 30 years of the conflict, the $65 is very minimal, Your Honor. It constitutes the minimal thing. Then the government argues, OK, we will leave that argument. The fact that he installed computer, that means he was helping communication. But even for communication, our first argument was the material. Word material is qualified there. Secondly, the fact that he installed some software doesn't necessarily mean that he was helping the organization to communicate. He said in the testimony that there was some literature on peace activities. It could be for storage, it could be for printing, for various reasons. There is nothing here that says he actually liked that, like the other case, the Navy case. We have the petitioner in that case actually communicating, actually passing information, collecting information about the enemy and passing to the terrorist organization. But that is not the case here. There was no communication whatsoever in this case. He simply installed some software. And then I come to the last issue, the D-Loss issue. The D-Loss issue is addressed by this court in Anarchami case. But our position is it's not settled yet, Your Honor, because the petition for re-hearing and solution for in-bank hearing has been filed and it is still pending with the court. So it is not a settled issue yet. And in the Anarchami court, Your Honor, the court's main rationale, the court recognized there are problems with this law. It might create some results and everything. In spite of that, the court's answer is the waiver provision is panacea for whatever illness, whatever problem with the statute. But Judge Nelson addressed this problem in Khan v. IMS, the Khan case. The judge addressed that problem. I'll give you the practical problem with the waiver. In Anarchami case, the court said, OK, he could apply for waiver and everything should be fine. But until now, that four years he was granted asylum, he was found to have passed prosecution in 2008. Until now, four years now, there's no mechanism, there's no regulation about whether he could apply for waiver because people who are granted, who are in a similar situation before 2008, there's no mechanism whatsoever. And then we go to the Fourth Circuit case recently, where also the court relied mainly on the waiver provision. There it's interesting that the immigration judge and the DIA made a finding that he did it under duress. In spite of that, the waiver was denied. He was not granted waiver in spite of the fact when the judges made a finding, he did it under duress. And the other main problem with this waiver provision, Your Honor, is unreviewable. The whole provision is unreviewable and given to the discretion of the agency. And in conclusion, what we think is waiver is expressly directed to a sole unreviewable discretion of three large bureaucratic government agencies has been exercised sparingly and is riddled with bureaucratic inefficiency. These are primarily words from Judge Nelson, Your Honor. So when particularly the treaty obligations are at stake, Congress would not leave such a substantial number of refugees with a haphazard and inefficient process as the only means of obtaining relief. Thank you, Your Honor. Mr. Eberman. Good morning, Your Honors. Ethan Cantor for the Department of Justice, representing the respondent in this case. I'd like to address the jurisdictional issues first. The court asked for supplemental briefing, which was provided, and counsel has just introduced an additional assertion relative to the jurisdictional sufficiency here to the effect that jurisdiction is not lacking with regard to withholding of removal and protection under the torture convention because he has asserted that there is an agreement between the United States and Canada under which if he's not granted asylum in Canada, he will be returned here. That agreement, I have not examined it, and let's assume that it exists. I think the court still lacks jurisdiction because under Spencer and the other jurisdictional cases, the court is obligated to assess its jurisdiction at every point in time. Jurisdiction is, in effect, standing within a time frame. Within this time frame, it is undisputed that the petitioner departed the U.S., which is a self-deportation. He is not in the United States. That's because he's under an order of deportation? Yes. Removal? If you depart under an order of deportation, as we cited in the letter brief to the court, that is a deportation as a matter of law. However, with regard to whether or not he will be sent back, of course this is purely speculative. There's no way to prove it. Sent back to the United States. Yes, sent back. I'm sorry. Thank you, Your Honor. Sent back to the United States is purely speculative. We don't know what will happen with the Canadian proceedings, even assuming what he says is, in fact, borne out by the agreement. Again, if the court's interested, I would seek leave to examine that in further briefing to the court. However, what we do know today is that he's out of the United States, and it's a classic mootness. There's no – with respect to – Only with respect to – Yes. Only with respect to withholding of removal, and withholding of removal under the Torture Convention. This court has no power to withhold his removal. He's in Canada. It has no influence over the Canadian government with regard to those two forms of relief. We could say it, though. I mean, I guess to play it out, tell me what you think happens if, in fact, he – Canada does return him to the United States and we've already ruled. Then you would say, sorry, you're too late, correct? Yes. The court has to assess its jurisdiction at this point in time. On the other hand, if we stayed it, I'm not suggesting we would want to do that, but then if he were returned, the mootness issue would have been resolved, correct? If he were to return – well – Let me put it this way. Let's assume that – He cannot return because he's inadmissible. He probably – it leads me to question whether or not he will be returned under this agreement. He's inadmissible for at least two reasons. One, he was deported, and that's a reentry bar under 212A9A. And secondly, he's inadmissible for having materially supported a terrorist organization. But, Your Honor, please – Well, I take your point, but I gather if, for example, if Canada ordered him back to the United States and we accepted him today, Canada would take care of the mootness question while this was pending. While this was pending, again, assuming he's admitted to the United States in some form – I'm just trying to peel back the onion one slice at a time. If he – I think even so, it – Well, I mean, I would rely on the reasoning outlined in this Court's decision in Shima, which held that the case is moot. If he were removed back today, would he be put back in the same place under the immigration law? I would have to examine that, quite frankly. Right. What I'm trying to discern is not to answer all the questions today, but to figure out what questions we need to solve to resolve this case. Well, I think that – And my question is, I guess if Canada removed – if Canada shipped him back here tomorrow and we accepted him, the case that mootness issue would disappear. I'm loathe to answer that question without having examined the status agreement that counsel referred to and so forth. But I think it goes to the fundamental point, if – if – and that is pure speculation, which does not confer jurisdiction. If he were returned to the United States after we – if we supposedly made a determination that the case was – his claims were mootness to the removal issues, and he later comes back to the United States, could he still apply for protection under the convention? My understanding is that any – he would be like any alien in the United States without status. I do not believe that a new claim based on a change of circumstances would – withholding of removal and CAT, then presumably he could assert that in the new immigration proceedings that would be instituted. Right. So I guess what you're saying, if I can distill it, is that if a case has been dismissed as moot because – I mean withholding and CAT, what I'm talking about. If the CAT claims and the withholding claims have been dismissed as moot because of self-removal, then the only remedy upon return to the United States would be a reopening and it would face the normal reopening bars. Is that kind of your position? I believe – I believe so and I believe, but I – again, I would have to cite – Subject to further briefing, I understand. Subject to further briefing, et cetera, et cetera, that the statute and the regs may specifically provide for the ability to renew a withholding of removal claim because at that point, you know, again, the Attorney General is obligated, you know, to withhold the removal of anyone who may be subject and that's a present tense inquiry. Okay. What happens if he prevails on his asylum claim? If he prevails on his asylum claim, then he will be an asylee and presumably eligible at some point for permanent residence. If he prevails on his asylum claim, does that make him admissible? Yes, because in reaching that conclusion, the court would have to find that he did not engage in terrorist activity and as to the reentry bar, it would also be canceling the order of removal in effect, so it would put him in a position to seek permanent residence at one point. I would like to address, if I may, counsel's other points with respect to CAT jurisdiction. Even though our position is the court lacks jurisdiction, I would just note briefly with respect to matter of GA that that does not help him. Matter of GA was three times the amount of risk and threat involving an Armenian Christian being sent to Iran. He was involved in narcotics trafficking and he was in the U.S. for a period of time, three marks against him and an entirely different situation here where although half the materials that he submitted in his reply brief are, all the materials are extra record. They do not fall within the court's jurisdiction to take judicial notice because they're not a dramatic foreign development such as an uprising. However, even taking them, the 09 report predated the BIA's decision and the 2010 report shows the same trending that the prior materials in the record demonstrated, which is that independent observers who met with those former LTTE combatants released saw no evidence of systematic torture or abuse. And by the end of the year, the government had formally charged 1,400 of the 11,000 or so and released approximately half of the remainder. And Mr. Asirvatham is not even an LTTE combatant or a former combatant. So I don't think even if the court had jurisdiction over the CAT claim, it could reach the conclusion that was reached in matter of GA. Turning to material support, the anacomy case, the court's published decision, controls the lion's share of the remaining issues in the case regarding asylum. It's not final yet. Excuse me? It's not final yet. Well, Your Honor, a petition for rehearing and rehearing on bank has been filed and it is in the course of briefing, but today anacomy is good law and controls this case. But, I mean, we may have to wait for it. That's true. But as to the, I can address the duress exception arguments, but I think they're very well addressed by the court in anacomy. As to the remaining issue in asylum before this court, whether or not the support provided was so trivial or insubstantial as to be a de minimis contribution, which by law is implied, is an implied exemption to the law and material support. I would note this court's positive citation and reliance on matter of SK in the court's decision, Hiley v. Holder, H-A-I-L-E. The IJ in this case cited and relied on, excuse me, and Haley is cited in the briefs, Your Honor. The IJ cited Hosseini, which is this court's decision, 471 at 953. And Hosseini, in which the fundraising consisting of selling some newspapers at one rally and recruiting by offering to make some phone calls to recruit, that was considered to be material support. And clearly the material support in this case far exceeds that. This is an individual. Let me ask one. Does our review of the question of materiality for substantial evidence or is it de novo? Questions of law are reviewed de novo. So this is a question of law, whether the facts in this record, which seem to be undisputed. Yes, they're undisputed. Meet the test of materiality, is that? Under the court's decision in con, this is a mixed question of law and fact, which is reviewed by the court de novo with deference, of course, to the agency's interpretation. And the court's decision in Haley, the board's decision in matter of SK have noted that there is no express de minimis exception. Has the board defined materiality? No. In matter of SK. What's your best explanation of a definition for materiality? Well, I don't think that I could provide a better definition than what Congress has done in the statute, which is to set out a list, a non-exclusive list of illustrative examples. And as the court noted in the con decision, Congress's intent was to create a very broad, very broad statute. And by definition, if you will, many cases that maybe are not, one would not be considered to have a great effect on the success or operations of a terrorist organization, are swept within that ambit. But counterbalancing that broad definition, Congress included a waiver. And that waiver is the mechanism by which the cabinet officials are, through their delegates, are empowered to make distinctions and in the exercise of discretion, provide relief in deserving cases. So is it your position that the listing of those items in the statute are per se materiality? Yes. They are per se examples of material support. But they're non-exclusive. And what Matter of S.K. did observe, as well as the court in Hiley, is that Congress included no express limitations on what could be material support. Except for the word material. Material modifies support. If Congress simply wanted to say support, it could have said support. Don't you think that the fact that Congress said material support means that it had something in mind, in terms of de minimis contributions? I think that we can divine congressional intent through the language that it used in the statute. That's what I was saying. And as to the definition of material support and whether that is, let me give an example. Because the board cited this case, the Boyne case, Seventh Circuit case, in which it noted that the purpose of eliminating terrorist fundraising and funding could be circumvented easily if there were some minimum threshold. And it was circumvented by merely pooling together numerous types. I get that. But when we're talking about duress cases, that's a whole different category. We have to take, I think, a little bit different look at what material support is, leaving aside our case. I mean, if it's true duress, it's a lot different than trying to put together, essentially, a money laundering scheme intentionally. I don't think that the duress transforms the nature of the issue. Why not? I mean, we have prisoners of war, American prisoners of war, who were forced to do labor, or had in the past been forced to do labor. It seems to me, looking at those circumstances, the department's definition of material support would be sufficient to say that they're providing material support to terrorists, if they're held. And this court enumerated in Kahn even more extreme examples, for example, Jews in resistance against the Nazis. So why don't you think duress makes a difference? Because I think that Congress was plain in its objective, which was to set out as broad a possible bar, and for the executive branch, in its unreviewable discretion, to make distinctions, because these matters are subject to fluid circumstances, foreign affairs. Many different considerations have to be taken into effect in providing relief or not at any given time. And we can debate the wisdom of Congress's choice in creating such a scheme. But that is the scheme. It is the scheme, but they did use the word material. They used the word material. Instead of just saying supply. If Congress had said, if you provide support to a terrorist organization, that's it. But it said material support. Well, the board in matter of SK took the approach. I read what they said. It took the approach that we're not going to decide whether there's a de minimis exception, because this ain't it. And in this case, I think we have a similar circumstance. Counsel alluded to adding up the numbers, and I don't know if he's correct, but he threw out $65. In anachrony, it was $37. But it's not merely monetary value. This was computer expertise. He provided 10 software packages. Right. And if he'd done this willingly, that would be one matter. I don't really question that. But here he says, both sides made me do it, and I did it for both sides under duress. Why don't you think that makes a difference? It didn't. It did not make a difference to Congress in creating the Bright Line Rule. My view is this, that these are cases arising from complex situations in foreign lands in which there is war. There are insurgencies. There are a multiplicity of factors involved in arriving at a conclusion as to what is duress. For example, Congress did not use the word duress in the material support definition. However, in the corresponding waiver in Section 1182 D3BI, it did use the word voluntary. And the Secretary of Homeland Security, pursuant to the language in the waiver provision, implemented duress exception to be addressed on a case-by-case basis by the Department of Homeland Security. I would simply say that it's a judgment call in any particular case, and Congress decided who should make that judgment. Not the immigration judges in the board with respect to interpreting the term material support, and by extension, not this court, but executive branch officials. So then there's really no role for us in this, once he's been labeled as having provided support at terrorist activities? This court has examined these provisions in several cases now, and for the most part, has concluded that there are no exceptions other than the sole exception enumerated in the statute, which has to do with either knowledge that the organization was a terrorist organization, or that the circumstances were such that he should have known. That's the sole exception, and this court has a role in entertaining questions of law with respect to the application of law to fact. But as to the waiver, no, the court has no review over the waiver. Thank you, counsel. Thank you very much. With respect to the de minimis argument, your honor, the Annachami case did not address that argument, and also on the issue of whether the communication per se is a material support, your honor, the petitioner beg to differ on it, because the clause not only talks about communication, it also talks about funds and transfer of funds, and so on and so forth. But with respect to funds, the BIA itself, in the matter of SK, engaged in an analysis, and said, okay, $110 in Burma is a material. Our position is that there's no per se, just because communication is mentioned in the statute, that it is a material support, and also the other argument we raised earlier, that there's nothing in the record that shows that he was, in fact, that computers were used for communication purpose. And with respect to the torture convention, your honor, the government itself said there is no change in the country reports. So that's what our position is. There's no change since the immigration judge made the first decision, and subsequently, the other three, four years, there's no change with respect to the country condition pertaining to torture. And finally, regarding, your honor, the Canadian stuff, and I apologize to the court to bring it at the last minute in the argument, but, your honor, by law, they have to be sent back, and I handle so many cases like this in my practice. When the claim is denied in Canada, they have to be sent back by operation of law, so they will be here, then the question is whether they will be put in a new proceedings, or whether they will become in the old status, and the BIA has addressed this issue in a precedent decision matter of RD recently, and the BIA's position is that when a person is sent back from Canada under this agreement, then he should be put in a new proceedings, but then the issue will come whether he can also litigate the old claim, and then the findings of the court, the res judicata, and other issues also will come to play, so that this court's finding will definitely have an impact if my client is sent back from Canada. Thank you, your honor. Thank you, counsel. Thanks for allowing me to appear by video link, your honor. Thank you. Case just argued will be submitted.
judges: Reinhardt, Thomas, Paez